IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK RAYSON,                          §
                                      §
            Plaintiff,                §
                                      §
V.                                    §          No. 3:16-cv-334-G-BN
                                      §
NANCY A. BERRYHILL,                   §
Acting Commissioner of Social Security, §
                                      §
            Defendant.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Mark Rayson seeks judicial review of a final adverse decision of the

Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The hearing decision

should be remanded for the reasons explained below.

## Background

Plaintiff alleges that he is disabled due to a variety of ailments, including

depressive disorder, adjustment disorder, somatoform disorder, and negativistic

personality disorder. After his applications for disability insurance benefits and

supplemental security income ("SSI") benefits were denied initially and on

reconsideration, Plaintiff requested a hearing before an administrative law judge

("ALJ"). That hearing was held on November 28, 2012. Shortly thereafter, the ALJ

issued a decision finding Plaintiff to be disabled (the "2012 Decision").

The ALJ largely relied on Dr. George R. Mount's assessment of Plaintiff to reach

this conclusion. Dr. Mount found that Plaintiff experienced "moderate" and "marked"

deficits in several functions concerning "understanding and memory," "sustained concentration and persistence," "social interaction," and "adaptation" based on the results of psychometric tests he conducted on Plaintiff, including the Millon Clinical Multiaxial Inventory-III (the "MCMI-III"). *See* Administrative Record [Dkt. Nos. 9-11 ("Tr.")] at 1107-08.

In the 2012 Decision, the ALJ described the MCMI-III in largely positive terms. Citing the Social Security Administration's regulations, the ALJ explained that "[the MCMI-III] may permit a more accurate evaluation than the clinical findings or tests previously used to evaluate severity, even though it relies on self-report." Tr. at 87 (citing 65 Fed. Reg. 50746, 50764-65 (August 21, 2000)).

On July 7, 2013, the effectuation office returned the matter to the ALJ to reevaluate Plaintiff's applications in light of evidence that Plaintiff had engaged in substantial gainful employment. Plaintiff was offered another hearing on April 24, 2014.

In the corresponding decision (the "2014 Decision"), the ALJ found that, although Plaintiff has worked intermittently since the alleged onset date, there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity.

Given his age, education, and exertional capacity for light work, the ALJ nevertheless found that Plaintiff was not disabled under the Medical-Vocational Guidelines.

The ALJ appears to attribute his change of a heart to a July 2013 policy change to the Social Security Administration's ("SSA") Policy Operation Management System (the "POMS") – an internal agency document used by SSA employees to process claims and that has persuasive authority. *See* 1 SOC. SEC. LAW & PRAC. § 1:27. In the 2014 Decision, the ALJ took notice of a policy change to the POMS, *see* Tr. at 20, which instructs the SSA "not [to] purchase symptom validity tests (SVT) to address symptom evaluation or issues of potential malingering as part of a [consultative exam]," POMS DI 22510.006D.

The ALJ concluded that, in light of this change to the POMS, he could not rely on the MCMI-III test results to support his decision, even though the MCMI-III was not purchased as part of a consultative exam. He appears to conclude either that the new POMS policy, by its own terms, does not allow ALJs to consider MCMI-III test results or that the policy indicates that MCMIs are unreliable and therefore inadmissible under the *Daubert* standard. *See Gillespie v. Astrue*, No. 1:13-cv-219, 2014 WL 1168872, at *9 n.3 (W.D. La. March 21, 2014) (explaining that *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), establishes the requirements for the admissibility of expert testimony under Federal Rule of Evidence 702).

The ALJ then found that Plaintiff was not disabled. Relying on a vocational expert's testimony, the ALJ concluded that Plaintiff was capable of working as a work ticket distributor (DOT 221.667-010), car checker (DOT 222.387-014), and deliverer

3

(outside) (DOT 230.663-010) – even if he might not be able to perform past relevant work. *See* Tr. at 27.

Plaintiff appealed the 2014 Decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that "the ALJ erred in refusing to consider the [MCMI-III test results] and the opinions based on such testing," Dkt. No. 14 at 14.

The undersigned agrees. The hearing decision should be reversed and the case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See*

*Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant

from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. But the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty

6

to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff contends that "the ALJ erred in refusing to consider the psychometric testing [in the record] and the opinions based on such testing," Dkt. No. 14 at 14, and thereby prejudiced Plaintiff with respect to the ALJ's determination on Plaintiff's residual functional capacity, *id.* at 12.

The Commissioner disagrees. She argues that the ALJ acted properly in disregarding the testing and assigning limited weight to the opinions based on the testing. She further contends that, if an error occurred, it was ultimately harmless.

The undersigned concludes that Plaintiff has the better of this issue for the reasons explained below.

I.   **The ALJ erred by categorically refusing to consider the MCMI-III test results in the record.**

As an initial matter, the undersigned finds that the ALJ refused to consider the MCMI-III test results. The Commissioner appears to suggest that the ALJ actually

7

reviewed the test results and simply found that they deserved no weight. *See* Dkt. No. 15 at 10 (contending that "[t]he ALJ concluded that no weight should be given Dr. Mount's MCMI test").

But the 2014 Decision suggests otherwise. The ALJ makes clear that he would not review the MCMI-III test results because he believed the POMS policy change did not allow him to do so. For instance, the ALJ states "that the agency [no longer] permits reliance on the MCMI" and that "[a]gency policy ultimately dictates the weight to be given to [Dr. Mount's findings]." Tr. at 19-20.

The Commissioner cites to the ALJ's statement that the MCMI-III is "no longer ... reliabl[e]" as evidence that he properly reviewed and weighed the test results in question. Dkt. No. 15 at 10 ("The ALJ concluded no weight should be given ... because the MCMI[-III] 'no longer satisfies the requirements of 12.00(D)(5)(c), POMS DI 33535.001, and DI 33535.035 for reliability.'"). But the ALJ only brought up the MCMI-III's reliability to justify why he should not have to consider the results in the first place. He, in fact, only mentions the unreliability of the MCMI-III because he explained that admitting the test would consequently "implicat[e] Daubert." Tr. at 20 (emphasis in original). In other words, he concluded that the MCMI-III is too unreliable for its results to be admissible under the *Daubert* admissibility standard and therefore was inappropriate for him to consider at all.

The ALJ's failure to consider the MCMI-III test results is an error of law.

"The duty to consider all evidence in the record when making a determination or decision about a claimant's disability is not only axiomatic to the proper functioning

8

of the social security system, it is explicitly required in the SSA regulations. 20 C.F.R. § 416.920(a)(3) (requiring the ALJ to 'consider all evidence in [the] case record when [making] a determination or decision whether [a claimant is] disabled' for purposes of SSI; 20 C.F.R. § 404.1520(a)(3) (same for disability insurance)." *Langer v. Astrue*, No. H-07-00966, 2008 WL 8053514, at *6 (S.D. Tex. March 24, 2008); *accord Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 911 (N.D. Tex. 2008). Because the MCMI-III test results are part of the record, the ALJ has a duty to review them.

The Commissioner nevertheless contend that the ALJ had discretion to ignore the MCMI-III test results. She notes that POMS DI 33535.001 only provides that the MCMI-III is among the tests "the Commissioner *may* use in determining a claimant's eligibility for benefits," not one that the Commissioner must use. Dkt. No. 15 at 12 (citing POMS DI 33535.001; emphasis in original). According to the Commissioner, this means that the ALJ was not required to consider those results in making his determination.

The Commissioner's argument is based on a misunderstanding of POMS DI 33535.001. The SSA regulations explicitly require the ALJ to "consider all evidence in [the] case record when [making] a determination or decision whether [a claimant] is disabled." 20 C.F.R. §§ 404.1520(a)(3) & 416.920(a)(3). To the extent that POMS DI 33535.001 does not require ALJs to use every test identified on its "cumulative list of ... diagnostic or evaluative techniques (or tests)," it only does so because the record before the ALJ likely does not include results for every test on that "comprehensive" list of tests. POMS DI 33535.001 does not and cannot override the ALJ's duty to review

all relevant evidence in the record. *See Rodysill v. Colvin*, 745 F.3d 947, 950 (8th Cir. 2014) (noting that the POMS does not control where "they are inconsistent with [SSA] regulation[s] or plainly erroneous").

The ALJ's rationales for ignoring the MCMI-III test results are similarly unpersuasive.

The ALJ appears to argue that POMS DI 22510.006D implicitly overturned other sections of the POMS that provide that an ALJ may consider the MCMI-III (and other SVTs) because "[t]hese tests may permit a more accurate evaluation than the clinical findings or tests previously used to evaluate severity." POMS DI 33535.001 & 33535.035; *see also Bragg*, 567 F. Supp. 2d at 911 (observing that ALJs are to "consider[] all relevant evidence of record").

It does not. *See* 2 AM. JUR. 2D ADMINISTRATIVE LAW § 238 ("If an agency includes a term in one provision of a regulation but excludes it in another, the court will not presume that the term applies to the provision from which it is omitted."). POMS DI 22510.006D instructs the SSA to not purchase SVTs, such as the MCMI-III, because SVTs cannot definitely determine whether a person is meandering. It does not follow that an ALJ should not consider the MCMI-III when it was not purchased as part of a consultative exam but is still a part of the record. The Note to POMS DI 22510.006D, in fact, explains that "[w]hen the results of [an] SVT are part of the medical evidence of record, we consider them with all of the relevant evidence." POMS DI 22510.006D. Courts addressing this issue have thus concluded that it is entirely proper for an ALJ to consider SVTs where, as here, they are part of the relevant evidence in the case

record. *See Florence v. Colvin*, No. CV 14-8594 DFM, 2015 WL 5305220, at *3 (C.D. Cal. Sept. 10, 2015); *Ivy v. Comm'r Soc. Sec. Admin.*, No. 3:12-cv-1351-MA, 2013 WL 4835103, at *7 n.2 (D.R. Or. Sept. 10, 2013). This is because an SVT's "inability to definitively confirm malingering does not preclude its use as a factor in assessing credibility." *Florence*, 2015 WL 5305220, at *3.

The ALJ also concluded that he is prohibited from considering SVTs in the record because POMS DI 22510.006D's note concerning the reliability of SVTs indicates that SVTs are not sufficiently reliable to satisfy the *Daubert* standard governing the admissibility of expert testimony. *See* Tr. at 20 (stating that the MCMI-III "no longer satisfies the requirements of 12.00(D)(5)(c), POMS DI 3353535.001, and DI 33535.035 for reliability, implicating *Daubert*").

This reasoning is also unconvincing. "*Daubert* interpreted Rule 702 of the Federal Rules of Evidence," which "do not apply in Social Security Administrative proceedings." *Ellis v. Colvin*, No. 3:13-cv-43, 2014 WL 2862703, at *16 (W.D. Va. June 24, 2014). This is because "a Social Security administrative hearing is a non-adversarial hearing, whereas the *Daubert* standard applies to adversarial proceedings where the Federal Rules of Evidence apply.'" *Gillespie*, 2014 WL 1168872, at *9 (quoting *Gangelhoff v. Apfel*, No. C99-4050MWB, 2000 WL 34032675, at *8 (N.D. Iowa Aug. 29, 2000)). Accordingly, "[e]vidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b)(1).

11

The MCMI-III test results are properly part of the record and, as a result, necessarily admissible. The ALJ accordingly had a duty to review them in making this determination. *See* 20 C.F.R. §§ 404.1520(a)(3) & 416.920(a)(3).

The Court should determine that the ALJ erred by categorically refusing to consider the MCMI-III test results.

II.   The ALJ could have found that Plaintiff was disabled if he had considered the <u>MCMI-III test results.</u>

"[F]ailure to adhere to the procedures proscribed by the Social Security regulations is generally sufficient grounds for reversal and remand of an administrative decision." *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (citing *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987)). But the ALJ's failure to consider the MCMI-III test results does not necessarily dictate a remand for further review. The Court will affirm a determination if the ALJ's error is harmless but remand where a plaintiff was prejudiced. *See id.* A plaintiff establishes prejudice by showing that if the ALJ properly adhered to the governing legal standard in question, he or she might have reached a different outcome. *See Ripley*, 67 F.3d at 557.

Here, the ALJ could have reached a different outcome. If the ALJ had considered the MCMI-III test results, he may have assigned more weight to Dr. Mount's opinion, which could have then led the ALJ to reach a different result – as he did in he 2012 Decision. The ALJ makes clear that Dr. Mount "found the chronic pain described by [Plaintiff] to be medically reasonable," Tr. at 20, and that if Plaintiff's assessment of his pain is accurate, it "would not permit the performance of even sedentary work on

12

a sustained basis," *id.* at 27. In fact, in the 2012 Decision, the ALJ considered the MCMI-III test results, largely deferred to Dr. Mount's conclusions, and found Plaintiff to be disabled from 2009 and onward. *See* Tr. at 86-91.

The Commissioner nevertheless insists that the ALJ's refusal to consider the MCMI-III test results is harmless.

The Commissioner notes that the ALJ was not required to defer to the MCMI-III test results because they "do[] not produce a definitive diagnosis or quantifiable limitations in mental functioning." Dkt. No. 15 at 11 (citing Tr. at 1089). She also notes that there is evidence in the record contradicting Dr. Mount's opinion and the MCMI-III test results on which his opinion is based. *See id.* at 9-12.

These arguments fail to persuade for at least three reasons.

First, the MCMI-III test results need not definitively prove that Plaintiff is disabled for Plaintiff to have been prejudiced by the ALJ's failure to consider them. Plaintiff is not required to establish unequivocally that the ALJ would have reached a different decision. *See Gullett v. Chater*, 973 F. Supp. 614, 621 (E.D. Tex. 1997). He only must establish that the ALJ could find the evidence sufficiently persuasive to reach a contrary conclusion.

Second, some of the Commissioner's justifications do not appear in the ALJ's actual decision. *See, e.g.*, Tr. at 9 (appearing to suggest that Dr. Mount's conclusions may not be credible because the impairments he identifies do not appear in Plaintiffs' "several disability applications"). Courts "may affirm only on the grounds that the

Commissioner stated for [the] decision." *Prudhomme v. Colvin*, 605 F. App'x 250, 254 (5th Cir. 2015) (citing *Copeland*, 771 F.3d at 923). And, as explained above, the ALJ makes clear that his decision to provide limited deference to Dr. Mount's conclusions – this time around – was largely based on his categorical refusal to consider the MCMI-III test results in the record. *See* Tr. at 19-20 (stating "that the agency [no longer] permits reliance on the MCMI" and that "[a]gency policy ultimately dictates the weight to be given to [Dr. Mount's findings]").

Third, "[b]ecause the ALJ categorically excluded the MCMI[-III] test results," to affirm, the undersigned would have to "make findings on how the ALJ would treat the [MCMI-III test results]" if the ALJ were to properly weigh them against the contrary evidence that the Commissioner references. Dkt. No. 16 at 5. But the Court will not speculate as to what decision the ALJ would reach. "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

The undersigned thus concludes that the ALJ's refusal to consider the MCMI-III Test Results may have prevented the ALJ from finding in Plaintiff's favor.

## Recommendation

The hearing decision should be reversed and remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

14

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: March 3, 2017

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE